1

2

HONORABLE RONALD B. LEIGHTON

3

4

5

6

7

FILED _____ LODGED
_____ RECEIVED

NOV 18 2003

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

02-CV-02568-ORD

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11

12

13

14

15

IRFAN GOKCE,

            Petitioner,

v.

JOHN D. ASHCROFT, et al,

            Respondents.

Case No.  C02-2568  RBL

ORDER ON REPORT AND
RECOMMENDATION

16

17

18

19

THIS MATTER comes before the Court on the government's motion to dismiss a petition for writ of habeas corpus filed by Irfan Gokce. The relief sought by petitioner is a Court order appointing counsel (at government expense) to represent Gokce in removal proceedings before the Immigration Court in Seattle.

20

**BACKGROUND**

21

22

23

24

25

26

27

28

Petitioner is alleged to be a native and citizen of Turkey. (Dkts. #4 at 4 and #11, Exhibit A)  The parties agree that petitioner entered the United States illegally near Blaine, Washington on September 29, 2000. He was immediately apprehended by Border Patrol agents and taken into custody. (Dkts. #4 at 5 and #11, Exhibit A)  According to the government, this was not Gokce's first illegal entry. (Dkt. #10 at 2)  On the same date Gokce was apprehended, the INS issued a Notice to Appear, placing petitioner in removal proceedings, and alleging removability pursuant to Section 212 (a)(6)(A)(i) of the Immigration and Nationality Act ("INA") because petitioner had entered the United States without inspection. (Dkt. #11, Exhibit D)  Bond for his release was set at $30,000. (Dkt. #11, Exhibit C)

ORDER
Page - 1

1    On October 12, 2000, petitioner appeared *pro se* at his removal hearing. (Dkt. #4 at 5)  He

2  apparently waived his right to an attorney, stating that he wanted to speak for himself. (Dkt. #4 at 5)  The

3  IJ then determined that petitioner was removable as charged. Petitioner stated that he would be persecuted

4  if he was removed to Turkey, so the IJ provided him an application for asylum, withholding of removal,

5  and protection under the Convention Against Torture ("CAT").  The IJ scheduled a merits hearing for

6  October 17, 2000. (Dkt. #19, Exhibit A at 6-8)

7    On October 17, 2000, petitioner again appeared at his hearing *pro se*. (Dkt. #19, Exhibit A at 9)

8  When the IJ asked Gokce his name, he answered that he didn't know. (Dkt. #19, Exhibit A at 9)  When

9  the IJ then asked if he was choosing to remain silent, he stated that he was choosing to become an

10  American citizen. The IJ explained that she could not grant him citizenship, but she could hear his asylum

11  application. (Dkt. #19, Exhibit A at 10)  Gokce was given until October 30, 2000 to fill out and return the

12  asylum application. (Dkt. #19, Exhibit A at 11)

13    Petitioner submitted his asylum application by October 30, 2000, as directed. On January 17,

14  2001, the IJ conducted an asylum hearing. (Dkt. #19, Exhibit A at 45)  Petitioner was again appearing *pro*

15  *se* and was the only witness. He testified that he had been arrested and beaten in Turkey because he left

16  the military without permission. (Dkt. #19, Exhibit A at 45-57)  He also testified that in 1989, he wanted

17  to leave Turkey and come to America to become a movie star, but that the Turkish authorities stopped him

18  and put him in a "mad house." (Dkt. #19, Exhibit A at 58)  He said that both the Turkish and the

19  American authorities were giving him "medicine" through his food and water. (Dkt. #19, Exhibit A at 59)

20  Gokce also declared that he wanted to be president, king, dictator or leader of a state or country and that

21  he wanted to restore the Ottoman Empire. (Dkt. #19, Exhibit A at 60-63)

22    At the conclusion of petitioner's testimony, the IJ expressed concern about his mental state but

23  nonetheless denied all of petitioner's requested forms of relief. (Dkt. #4 at 6)  On January 29, 2001, the IJ

24  issued a 26-page written decision denying asylum and ordering removal to Sweden or, in the alternative,

25  to Turkey. (Dkt. #11, Exhibit F at 26)

26    On February 13, 2001, petitioner filed a timely appeal with the Board of Immigration Appeals

27  ("BIA"). (Dkt. #11, Exhibit G at 1)  On September 21, 2001, the BIA remanded the case back to the IJ to

28  determine whether petitioner was mentally competent to waive counsel during his removal proceedings.

1  (Dkt. #11, Exhibit G)  The BIA noted that both the IJ and the government agreed that petitioner had
2  "mental issues" and the IJ's decision relied in part on an adverse credibility finding.

3       On remand, the IJ asked the INS to have petitioner evaluated by a psychologist. (Dkt. #19, Exhibit
4  B at 1-2)  Petitioner's case was thereafter continued three times because the INS had not obtained an
5  evaluation of petitioner's mental state. (Dkt. #4 at 6)  Finally, on November 16, 2001, a hearing was held
6  at which the INS submitted a five-sentence document entitled "Progress Notes" prepared by a social
7  worker who purportedly interviewed petitioner. (Dkt. #19, Exhibit C)  The notes state that petitioner was
8  competent to participate in his removal proceedings.  Although the social worker was not present at the
9  hearing, the "Progress Notes" were received by the court.  The IJ made no finding at that time but stated
10 that a new hearing would be scheduled before the presiding IJ. (Dkt. #4 at 7)

11      Petitioner appeared at his next hearing on January 17, 2002 and informed the IJ that he wanted an
12 attorney.  The case was continued and, over the next several months, petitioner's case was repeatedly
13 rescheduled to afford petitioner the opportunity to find legal assistance. (Dkt. #4 at 7)

14      Finally, on March 29, 2002, the IJ held a hearing on petitioner's asylum application even though
15 petitioner had failed to obtain legal representation.  Again, Mr. Gokce seemed to have little understanding
16 of the proceedings, answering the majority of the IJ's questions by saying: "I do not understand," "no
17 comment," or "no answer." (Dkt. #19, Exhibit B at 22-41)  Gokce verbally attacked the IJ as a "no good
18 person" and declared that the IJ, the INS attorney, the American government and the American media had
19 treated him badly. (Dkt. #19, Exhibit B at 30-35)  At the close of the proceedings, Gokce was asked to
20 designate a country of removal should his application be denied.  Petitioner chose Switzerland and
21 Mexico.  When told by the IJ that Mexico could not be designated he responded, "then send me to the
22 moon." (Dkt. #19, Exhibit B at 40)

23      In a written opinion, the IJ found that petitioner was competent to participate in his removal
24 proceeding, that his request for asylum should be denied and that Switzerland and, in the alternative,
25 Turkey should be designated as the country of removal. (Dkt. #11, Exhibit H at 12-13)

26
27
28

1    Petitioner appealed to the BIA on April 29, 2002. (Dkt. #4 at 8) His case was sent for screening
2    by the BIA's Pro Bono Project. A *pro bono* attorney from New York City agreed to represent Gokce on
3    his BIA appeal only. She entered her appearance before the BIA, and filed an appeal brief.
4    (Dkt. #4 at 8-9)

5    On November 6, 2002, the BIA once again remanded the case back to the IJ for "further fact-
6    finding with respect to [petitioner's] mental competency." (Dkt. #11, Exhibit J at 2) The BIA assumed
7    that petitioner's *pro bono* attorney would continue to represent petitioner before the IJ, declined to address
8    any issues raised in the appeal brief, and stated that "at this juncture the burden [of proving mental
9    incompetency] in this case lies squarely with [petitioner's] counsel". (Dkt. #11, Exhibit J at 2)

10   On November 14, 2002, petitioner's *pro bono* counsel filed a motion to reconsider the BIA's
11   decision because it was based, in part, on the erroneous assumption that she would represent petitioner
12   before the IJ on remand. (Dkts. #4 at 9 and #19, Exhibit E) That motion was still pending as of March
13   24, 2003. (Dkt. #18 at 7)

14   In the meantime, petitioner appeared at several more hearings in Immigration Court. Petitioner
15   continued to request counsel, and hearings were rescheduled to allow him time to find legal assistance.
16   (Dkt. #4 at 9) At a hearing on December 3, 2002, the IJ continued petitioner's case until December 30,
17   2002, but stated that if petitioner appeared without counsel, she would certify the case to the BIA for
18   further guidance. (Dkt. #4 at 9)

19   On December 26, 2002, petitioner filed, *pro se*, the instant habeas petition pursuant to 28 U.S.C.
20   § 2241, along with a motion to appoint counsel. (Dkts. #4 and #5) The petition and motion were
21   prepared with assistance from the American Immigration Law Foundation ("AILF"). (Dkt. #5 at 2-3)
22   Pursuant to the provisions of the Criminal Justice Act, 18 U.S.C. § 3006A(a)(2)(B), the Magistrate Judge
23   (Hon. Monica Benton) determined that the interests of justice require that legal representation be provided
24   to a financially eligible person who is seeking relief under 28 U.S.C. § 2241 and granted petitioner's
25   motion for appointment of counsel through these habeas proceedings.

26   On March 24, 2003, petitioner's newly-appointed counsel filed a supplemental brief and motion to
27   appoint counsel in petitioner's immigration proceedings. (Dkts. #17 and #18) Respondents filed a

28

1  response which included a cross-motion for a Rule 16 pre-trial conference. (Dkt. #21) Petitioner objected
2  to a pre-trial conference, stating that it was not necessary in this case. (Dkt. #24)

3      For a brief period of time, petitioner was able to secure *pro bono* counsel in his immigration
4  proceedings but counsel was allowed to withdraw sometime during the summer of 2003 and petitioner has
5  recently attended an immigration hearing *pro se*. (Dkt. #28 at 1-2) From that time forward, petitioner has
6  pushed for resolution of his request for court-appointed counsel at immigration proceedings while
7  respondents advocate delay so that efforts to locate replacement *pro bono* counsel could continue. (Dkt.
8  #30 at 1)

9      On July 29, 2003, the magistrate judge denied respondents' request to hold these matters in
10  abeyance and for a pre-trial conference. (Dkt. #31) The habeas petition and respondent's motion to
11  dismiss were re-noted for August 22, 2003. On August 21, 2003, respondents filed a supplemental status
12  report and memorandum in which they alleged that a psychological evaluation of petitioner had recently
13  been completed and that petitioner was deemed competent to proceed in Immigration Court without
14  counsel. Respondents also asserted that replacement *pro bono* counsel could not be secured because local
15  immigration attorneys had been encouraged to abstain from representing Gokce, so that his could be a test
16  case to advance the proposition that aliens have a Fifth Amendment right to counsel in immigration
17  proceedings. (Dkt. #32 at 1-2) The proceedings were re-noted to September 12, 2003 to give petitioner
18  an opportunity to respond.

19      On September 11, 2003, petitioner filed a copy of the psychological evaluation under seal. (Dkt.
20  #38) Petitioner denied that the psychological evaluation says what respondents think it says and further
21  denied any interference with the entrance of *pro bono* counsel in the immigration proceedings. (Dkt. #37
22  at 1-5 and Exhibits 1-6)

23      On September 25, 2003, the magistrate judge authored a report and recommendation urging the
24  Court to grant the habeas petition and deny respondents' motion to dismiss. The Court was advised to
25  appoint legal counsel for petitioner's immigration proceedings pursuant to provisions contained in the
26  Criminal Justice Act. For the reasons set forth below, this Court believes that a less ambitious approach
27  to Mr. Gokce's quandary is appropriate.

28

1

**DISCUSSION**

2        A deportation proceeding is a purely civil action to determine eligibility to remain in this country,

3  not to punish an unlawful entry. A petition for asylum is but one basis for an illegal alien to avoid

4  deportation. Because the proceeding is civil in nature, various protections that apply in the context of a

5  criminal trial do not apply in a deportation hearing. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038

6  (1984). For example, an alien subject to a deportation proceeding has no Sixth Amendment right to the

7  appointment of counsel at government expense. *United States v. Gasca-Kraft*, 522 F.2d 149, 152 (9th Cir.

8  1975). Similarly, the Criminal Justice Act which provides for the appointment of compensated counsel in

9  certain enumerated situations makes no provision for appointing counsel to represent aliens for their

10  deportation/removal proceedings before the Immigration Court or before the BIA. *See* 18 U.S.C. §

11  3006A. Finally, the provisions of the Immigration and Nationality Act that govern deportation/removal

12  proceedings do not afford the subject of such proceedings with appointed counsel. Specifically, 8 U.S.C.

13  § 1362 states:

14        In any removal proceedings before an immigration judge and in any appeal proceedings
          before the Attorney General from any such removal proceedings, the person concerned
15       shall have the privilege of being represented (at no expense to the Government) by such
          counsel, authorized to practice in such proceedings, as he shall choose.
16

17  The parties are in agreement that neither the right to counsel provided in the INA, the Sixth Amendment

18  to the Constitution, nor the CJA authorize the appointment of counsel in removal proceedings. (Dkt. #18

   at 7)
19

20        The parties also agree that under the Fifth Amendment an alien is entitled to due process in his

21  deportation hearing. By statutory and regulatory authority an alien is entitled to counsel of his own choice

22  at his own expense, 8 U.S.C. § 1362, reasonable notice of charges, 8 U.S.C. § 1229(a), reasonable

23  opportunity to present and examine evidence, 8 U.S.C. § 1229a (b)(4)(B), and to require sufficiency of

   evidence to support removability, 8 U.S.C. § 1229a(c)(3)(A). Denial of these rights may constitute an
24

25  abuse of discretion requiring remand. If the prejudice to the alien is sufficiently great, the constitutional

26  guarantee of due process may be violated. *See Baires v. INS,* 856 F.2d 89, 91 (9th Cir. 1988); *Campos-*

   *Sanchez v. INS,* 164 F.3d 448, 450 (9th Cir, 1999). The parties further agree that petitioner would benefit
27

28  from legal representation during proceedings before the Immigration Court or BIA. Herein ends the

   points of agreement between the parties on this matter.

ORDER
Page - 6

1    Petitioner argues that because the Immigration Court can't appoint counsel, but also won't proceed
2  if he is unrepresented, he is "trapped in a legal quandary." (Dkt. #18 at 1)  Petitioner asserts that he has,
3  and continues to be, denied his right to a fair hearing as required by the INA and the Fifth Amendment to
4  the U.S. Constitution. (Dkt. #18)  Petitioner urges this Court to rule that where, as here, an alien is not
5  able to meaningfully participate in his hearing whether by mental defect or general inability to understand
6  complex factual and legal concepts, appointment of legal counsel is required under the due process clause
7  of the Fifth Amendment. (Dkt. #18 at 13)  Petitioner asks this Court to follow the case-by-case approach
8  referenced, but not adopted, by the Sixth Circuit, and appoint counsel in his case as a matter of
9  fundamental fairness. (Dkt. #18 at 8)  *See Aguilera-Enriquez v. INS*, 516 F.2d 565, 568 (6th Cir. 1975).

10    In the *Aguilera-Enriquez* case the Sixth Circuit enunciated a test for determining whether due
11  process requires the appointment of counsel for an indigent alien in a deportation/removal hearing.  The
12  Court stated that wherever the assistance of counsel would be necessary to provide fundamental fairness
13  (the touchstone of due process), counsel should be appointed.  In a footnote, the Court elaborated by
14  saying, "where an unrepresented indigent alien would require counsel to present his position adequately to
15  an immigration judge, he must be provided with a lawyer at the Government's expense.  Otherwise
16  'fundamental fairness' would be violated." *Aguilera-Enriquez v. INS*, 516 F.2d 656, 568 n.3 (6th Cir.
17  1975).  The Court borrowed the fundamental fairness language from the Supreme Court's decision in
18  *Gagnon v. Scarpelli*, 511 U.S. 778 (1973), a case involving revocation of probation following commission
19  of a burglary.  There the Court held that revocation of probation, while not a stage of a criminal
20  prosecution, nevertheless results in a loss of liberty requiring a hearing and, on a case-by-case basis, the
21  appointment of counsel. *Gagnon v. Scarpelli*, 411 U.S. 778, 782 and 787 (1973).  The Supreme Court
22  identified those cases where counsel should be appointed by stating:

23    "Despite the informal nature of the proceedings and the absence of technical rules of procedure or
       evidence, the unskilled or uneducated probationer or parolee may well have difficulty in presenting
24     his version of a disputed set of facts where the presentation requires the examining or cross-
       examining of witnesses or the offering or dissecting of complex documentary evidence."
25
     *Id.* 411 U.S. 778, 786-87 (1973).
26
       Since the 1973 decision in *Gagnon* the appointment of counsel in revocation hearings has become
27
     universal.  Just as the case-by-case approach to the right to counsel in felony prosecutions adopted in *Betts*
28
     *v. Brady*, 316 U.S. 455 (1942), was later rejected in favor of a *per se* rule in *Gideon v. Wainright*, 372 U.S.

ORDER
Page - 7

1  335 (1963), so too has the case-by-case approach to appointment of counsel in revocation hearings given

2  way to a statutory *per se* rule. *See* 18 U.S.C. § 3565, and Fed.R.Crim.Proc. 32.1(a)(3)(B). It is possible

3  that petitioner and his allies in the case at bar wish to have the law regarding appointment of counsel in

4  immigration proceedings develop in similar fashion. Unfortunately, in the almost thirty years since

5  *Aquilera-Enriquez* was decided by the Sixth Circuit, not one Court has determined that the due process

6  clause of the Fifth Amendment required appointment of counsel in a particular deportation/removal

7  proceeding. For that matter, even the *Aquilera-Enriquez* court did not so hold. Petitioner argues that his

8  case is that case where the next step should be taken in the evolutionary process toward universal

9  representation for illegal aliens facing removal. This Court disagrees.

10        This Court cannot identify, and counsel has not recommended, any articulation of relevant facts

11  that would allow appointment of counsel for Mr. Gokce without also requiring the appointment of counsel

12  in a significant number, if not all, of the over 200,000 formal removal hearings conducted annually in this

13  country. Whether or not petitioner suffers from some mental defect (a point which is not at all clear from

14  the record)[1], he has been able to articulate his belief that he will suffer from persecution if he is returned to

15  his native country, Turkey. This level of participation in the removal proceeding is as meaningful as that

16  provided by scores of other aliens involved in similar proceedings. Whether due to problems of language,

17  a lack of understanding of complex questions of law, procedure, or foreign policy, or some form of mental

18  defect, many aliens lack the ability to marshal the facts and arguments necessary to fully advance their

19  case for the granting of asylum or some other status that would allow them to avoid removal. Although

20  Congress specifically excludes the appointment of counsel at government expense for such aliens, it has

21  made provision for a system of procedures and policies that insure due process for aliens embroiled in

22  removal proceedings, including:

23     1)    The right to petition the government for political asylum, 8 U.S.C. § 1158(b)(1);

24     2)    The right to an evidentiary hearing with appropriate notice and the right to attend said

25           hearing, 8 U.S.C. § 1229(a);

26

27        [1] An outside mental health professional with SeaMar Community Health Centers of Seattle found petitioner to be competent. Later, a forensic psychologist, Dr. Jeffrey Bremer, examined petitioner. He first opined that petitioner was competent to participate in his removal and related proceedings. In a follow-up letter, Dr. Bremer stated that because petitioner is occasionally delusional and he frequently contradicts himself and has a pervasive distrust of the judicial system, including INS proceedings, he is not competent to present evidence on his own behalf and otherwise meaningfully participate in trial type proceedings.

28

ORDER
Page - 8

1    3)    The right to present evidence and argument in support of the claim of a well-founded fear

2          of persecution if returned to his country of nationality, 8 U.S.C. § 1158;

3    4)    The right to counsel of his choice at no expense to the government, 8 U.S.C. § 1362;

4    5)    The right to require that the evidence presented be legally sufficient to support

5          deportability, 8 U.S.C. § 1229a(c)(3)(A).

6    It is the opinion of this Court that the aforementioned procedural safeguards comply with the requirements

7    of due process and the facts of this case do not require more. Specifically, the fundamental fairness

8    requirement of the due process clause does not compel the appointment of counsel at government expense.

9    Nevertheless, inasmuch as all parties agree that petitioner would benefit from the assistance of counsel (as

10   would be the case for any *pro se* litigant), the Court will agree to lend assistance to the effort to secure *pro*

11   *bono* counsel who will appear on behalf of Mr. Gokce before the Immigration Court. To that end, the

12   Court will soon schedule a status conference with counsel to facilitate the Court's involvement in that

13   effort. For the reasons stated above, the Report and Recommendation is not adopted.

14        The Clerk shall send a copy of this Order to petitioner, petitioner's counsel, counsel for

15   respondents, any party filing an amicus brief, and the Honorable Monica J. Benton, United States

16   Magistrate Judge.

17        Dated this  17th day of  November , 2003

18

19

20                           RONALD B. LEIGHTON
                             United States District Court Judge

21

22

23

24

25

26

27

28

ORDER
Page - 9